NOT DESIGNATED FOR PUBLICATION

No. 111,519

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

WILLIAM G. KANGAS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Harper District Court; LARRY T. SOLOMON, judge. Opinion filed September 18, 2015. Affirmed.

*Christina M. Kerls*, of Kansas Appellate Defender Office, for appellant.

*Janis I. Knox*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before PIERRON, P.J., MCANANY, J., and BURGESS, S.J.

*Per Curiam*:  A jury convicted William G. Kangas of aggravated kidnapping, criminal threat, domestic battery, and criminal damage to property. Kangas argues multiple constitutional rights were violated when a video recording of the victim's statement to the police, admitted at trial without objection, was given to the jury for examination in the jury room. We affirm his convictions.

Kangas does not challenge the sufficiency of the evidence supporting his convictions. Rather, he poses a legal question on jury procedure. Consequently, a brief factual statement will suffice.

1

Sarah Sokerka, Kanga's girlfriend, testified about an argument she had with Kangas because she had sexual relations with another man. Kangas wanted to know the name of the man. Sokerka told her pastor, her mother, a nurse at the hospital, and the police detective similar accounts of how Kangas had beaten her, would not let her leave the house, smashed her cell phone, pulled her around by her hair, body slammed her, choked her, and threatened her and her family if she told anyone the truth of what had happened. At trial, Sokerka told the jury that Kangas was still her boyfriend. She recanted or could not remember many of the things in her statements to numerous people around the time of the incident.

The State had charged Kangas with aggravated kidnapping, criminal threat, domestic battery, and criminal damage to property. During the State's case-in-chief, the trial court admitted the video of Sokerka's interview with Chief of Police Kenneth Hodson at the Anthony police station. Defense counsel did not object to the admission of the video. The prosecutor then stated, "Thank you, Your Honor. And Your Honor, I'm not going to play it for the jury at this time, but I would ask . . . that they be able to look at it during their deliberations as they do so." The trial court responded, "Well, it's admitted as an exhibit and all exhibits go to the jury room, so I don't know that we have anything up there to display it, but we'll cross that bridge when we get to it, if they desire to look at it." The prosecutor's encouragement to the jury did not stop there.

In the State's rebuttal closing argument, the prosecutor stressed the similarity of all of Sokerka's statements around the time of the incident. He then directed the jury's attention back to the video recording of Sokerka's interview with Chief Hodson,

> "You're going to have a video tape that you can listen to upstairs that is in evidence, and you'll have a laptop, I believe, that you can play it on. And this is the interview that she had with Chief Hodson when she told what happened to her under questioning by Chief

Hodson. He asks all these questions that you might have in your mind, and she answers them. And I would encourage you to look at that video."

At the end of closing arguments, the trial court informed the jury that the instructions and the evidence would be brought to the jury room.

The jury convicted Kangas as charged. The trial court granted a substantial departure to a controlling sentence of 88 months' imprisonment. The reason cited by the trial court for departure was "[b]ased solely on the request of the victim, . . . made in open court on day of sentencing."

On appeal, Kangas argues his constitutional and statutory rights to be present at all critical stages of the trial and his right to have the trial judge present at his trial were violated when the evidence at trial was exhibited to the jury outside of his presence. The State contends that Kangas' argument has no merit and a subsequent statutory amendment expressly allows the jury to view admitted exhibits in the jury room during deliberations.

Kangas did not object to the trial court's procedure of sending the exhibits to the jury room during deliberations. Generally, issues not raised before the trial court cannot be raised on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). Kangas argues his case meets the exception of a question of law or the exception to serve the ends of justice and should be addressed for the first time on appeal. See *State v. McCullough*, 293 Kan. 970, 998, 270 P.3d 1142 (2012). Our Supreme Court recently addressed similar claims for the first time on appeal. See *State v. Bowen*, 299 Kan. 339, 354-55, 323 P.3d 853 (2014). As such, we will address the merits of Kangas' claim.

A defendant in a criminal case has the right to be present at all critical stages of the trial. *Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S. Ct. 2658, 96 L. Ed. 2d 631 (1987); *State v. Herbel*, 296 Kan. 1101, 1106, 299 P.3d 292 (2013). "That right emanates

3

from the Sixth Amendment right to confront witnesses and from the right to due process guaranteed under the Fifth and Fourteenth Amendments to the United States Constitution. [Citations omitted.]" *State v. Davis*, 284 Kan. 728, 731, 163 P.3d 1224 (2007).

In support of his argument that he was excluded from a critical stage of his trial, Kangas cites to *Herbel*. In that case, the defendant was charged with various counts of sex crimes committed against a child. The defendant had given a videotaped interview to the police that contained highly incriminating admissions. At trial, the video recording of the interview was admitted into evidence. During deliberation, the jury asked to review portions of this video. The jury was brought into open court, and portions of the video were replayed. However, the record failed to indicate that the defendant was present during the replay. From the silent record, the court presumed that the defendant's right to be present at a critical stage of the trial had been violated. The *Herbel* court noted:

> "[K.S.A. 22-3420(3)] also plainly mandates that the evidence 'shall be . . . exhibited to them *in the presence of the defendant* unless he voluntarily absents himself.' (Emphasis added.) Consequently, where the jury has requested the officer conduct them to the court after deliberations began, the defendant has an absolute statutory right to be present when any evidence 'is exhibited' to the jury after deliberations began." 296 Kan. at 1109.

Because the error arose in the context of the trial court's communication with the jury in the courtroom, the Supreme Court found that Herbel's constitutional rights were violated as well. The court cited with approval *State v. Perkins*, 248 Kan. 760, 769, 811 P.2d 1142 (1991), for the proposition that a defendant's presence is required at every critical stage of the proceeding, including "'all times when the jury is present in the courtroom and whenever the trial court communicates with the jury.'" *Herbel*, 296 Kan. at 1109. Finding both statutory and constitutional error, 296 Kan. at 1109-10, the Supreme Court proceeded to conduct a harmless error analysis and found that in Herbel's case, the error was harmless. 296 Kan. at 1115. But in this case, the jury had the evidence, which was admitted without objection at trial, in the jury room with it. There

4

was no request to return to the courtroom to examine anything. There was no interaction with the judge. Very recently, this court in *State v. Garcia*, No. 110,901, 2015 WL 770182, at *3-5 (Kan. App. 2015) (unpublished opinion), *petition for rev. filed* March 11, 2015, was asked to examine just such a situation.

In *Garcia*, the court analyzed whether allowing the jury to view exhibits outside of the defendant's presence violated his constitutional and statutory rights. Garcia's jury was allowed to take admitted evidence back into the jury room with it. There, like here, the defendant relied on *Herbel* in arguing that the jury needed to view the exhibits in open court and in his presence. This court determined that the holding in *Herbel* applied only "to those circumstances specifically described in the statute" and not to any time the jury viewed evidence. 2015 WL 770182, at *4. We agree. The statute in effect at the time required the defendant's presence when the jury requested to return to the courtroom for the court to answer questions regarding the law or to exhibit the evidence in the case. See K.S.A. 22-3420(3). Likewise, the *Herbel* court found that it was the judicial contact with the jury that made such circumstances a constitutionally protected critical stage of the trial. 296 Kan. at 1107-09. That was not the case here. The judge had no contact with the jury in Kangas' case. The jury did not submit questions or ask to return to the courtroom. Jurors simply viewed the evidence in the jury room as part of their deliberations. All of the evidence so viewed was admitted in open court during the trial with Kangas and his attorney present. Defense counsel had no objection to the State's decision to not play the video statement to the jury or allowing it to go back to the jury room.

Moreover, as this court observed in *Garcia*, in 2014, since *Herbel* was decided, the Kansas Legislature amended K.S.A. 22-3420. It now provides: "In the court's discretion, upon the jury's retiring for deliberation, the jury may take any *admitted exhibits* into the jury room, where they may review them without further permission from the court. If necessary, the court may provide equipment to facilitate review." (Emphasis added.) K.S.A. 2014 Supp. 22-3420(c). The legislature expressed its intention that the

5

amended statute should be applied retroactively. K.S.A. 2014 Supp. 22-3420(f) states: "The amendments to this section by this act establish a procedural rule, and as such shall be construed and applied retroactively." Thus, with this amendment and the legislature's clear expression that the change should be applied retroactively, Kansas law provides that the admitted exhibits may be sent into the jury room for review.

Affirmed.