NOT DESIGNATED FOR PUBLICATION

No. 116,861

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DERRICK D. WATIE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; BRUCE C. BROWN, judge. Opinion filed February 9, 2018. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., HILL, J., and WALKER, S.J.

PER CURIAM: Derrick D. Watie asks us to overturn his convictions for possession of marijuana, interference with a law enforcement officer, and driving with a suspended license. He contends the patrol officer had no good reason to stop him and, therefore, the subsequent search of his person, where the marijuana was found, was illegal. Because Kansas courts, when deciding questions of reasonable suspicion to make a stop, will impute the knowledge of one officer to all officers, we hold the district court correctly denied Watie's motion to suppress the marijuana and affirm his convictions.

*Loud music from a pickup truck started this chain of events.*

When a Wichita police detective heard loud music and strong bass notes coming from a primer-colored pickup truck as it headed down the street towards him, he watched as it started to back into the driveway of the house where he was standing. By ordinance, Wichita has prohibited loud noises coming from a vehicle that is plainly audible more than 50 feet from the vehicle. The detective did not recognize the driver. The pickup stopped short and drove off. At some point, the detective noticed a large television in the front seat which aroused a slight suspicion of burglary and theft because one of the people who lived in the house had a juvenile record for burglary. The detective then radioed a request for any available officers to find the pickup and identify the driver. He did not have long to wait.

A few minutes later, a patrol officer found the pickup about two blocks away parked at the curb, with the driver talking on a cell phone. He turned his patrol car around and pulled in behind the pickup. The patrolman eventually determined that the driver was Derrick Watie after Watie first gave him a false name. Once the police determined his identity, they discovered there were outstanding warrants for his arrest and proceeded to arrest him. When he was arrested, the officers found marijuana in Watie's front pocket and a marijuana pipe in his pickup.

Watie waived a jury trial and was convicted after a bench trial. At trial, Watie first moved to suppress the evidence. He argued the police illegally seized him by detaining him without reasonable suspicion, and this illegal seizure required the suppression of the evidence found on his person.

When it denied the motion to suppress, the district court found that the police had a good reason for the stop. In light of the noise ordinance, the detective had a reasonable suspicion based upon the loud music coming from the vehicle. Although the court was

2

unsure whether the detective's glimpse of the television alone would have supported a reasonable suspicion, it certainly added to a reasonable suspicion. Going further, applying the collective knowledge doctrine—where the knowledge of one officer is the knowledge of all officers—the court found that the information the detective had was sufficient to justify the patrol officer stopping the pickup at the detective's request.

The court found Watie guilty of possession of marijuana, interference with a law enforcement officer, and driving on a suspended license. The court then sentenced him to 40 months in prison with 12 months' postrelease supervision. Watie appeals the court's denial of the suppression motion.

To us, Watie argues that since there was no reasonable suspicion or probable cause for the original stop of the pickup by the patrol officer, the marijuana and pipe should have been suppressed. In his view, the collective knowledge doctrine does not apply to these facts. For its part, the State contends for the first time on appeal that this was a voluntary encounter and not a stop. In the alternative, the State argues the collective knowledge doctrine does apply here and the patrol officer had a reasonable suspicion to conduct the stop.

We will not address the State's claim that this was a voluntary encounter and not a stop since it did not argue in that fashion to the district court. Generally, issues not raised before the trial court cannot be raised on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). This case is not an exception to the general rule because the question does not arise from proved or admitted facts.

*The court properly admitted the evidence.*

In order for us to rule on this appeal, we must review the collective knowledge doctrine. Under Kansas law, a court will impute knowledge of one officer to all fellow

officers for the purpose of determining whether reasonable suspicion exists for a stop. *State v. Niblock*, 230 Kan. 156, 160-61, 631 P.2d 661 (1981). In *Niblock*, a police officer was informed that a robbery had occurred. The officer had been provided a description of the vehicle driven by the suspect. Although the officer who conducted the stop did not have personal knowledge of the facts surrounding the robbery, the court determined the stop was proper. 230 Kan. at 160-61. This doctrine implicitly recognizes that police, at times, must react quickly, especially when crimes are being committed. The law in *Niblock* has since been refined by a panel of this court.

In *State v. Miller*, 49 Kan. App. 2d 491, 496-97, 308 P.3d 24 (2013), our panel used a test established by the United States Court of Appeals for the Seventh Circuit to analyze an issue regarding imputed knowledge to police officers:

> "'(1) the officer taking the action must act in objective reliance on the information received, (2) the officer providing the information—or the agency for which he works— must have facts supporting the level of suspicion required, and (3) the stop must be no more intrusive that would have been permissible for the officer requesting it.' [Citation omitted.]"

If we apply this three-part test to the facts of this case, we conclude that the court could reasonably impute the knowledge of the possible noise ordinance violation to the patrolman when he pulled in behind the pickup where Watie was sitting. The patrolman responded to the radio alert, spotted a pickup that matched the description, and acted on the alert by investigating further. In other words, the patrolman acted in objective reliance on the information he had received from the detective and not on his own impulse. We turn now to the second part of the test—what the detective knew.

In our view, the detective had sufficient facts to pursue the driver of the car for a possible noise violation. The detective, having heard loud music coming from the vehicle, provides a sufficient justification for a stop. After all, the ordinance prohibits

4

operating a motor vehicle with a sound amplification system to the extent that the sound is plainly audible at a distance of 50 or more feet from the vehicle. Wichita City Ordinance Section 11.38.380 (2007). Violation of a traffic ordinance, like the noise ordinance here, provides reasonable suspicion to perform a stop. *Whren v. United States*, 517 U.S. 806, 810, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996).

The detective's testimony that he heard loud music and bass coming from down the street sufficiently describes a reasonable suspicion that this ordinance has been violated. See *City of Manhattan v. Gibby*, No. 102,675, 2010 WL 3488815, at *3-4 (Kan. App. 2010) (unpublished opinion). In *Gibby*, a panel of this court found there was reasonable suspicion for a stop when an officer heard loud music coming from a car that was over a block away when the city had a similar noise ordinance. 2010 WL 3488815, at *3-4. Next we look at the stop itself.

Finally, this stop was not overly intrusive. It is important to remember that, at this point, we are dealing with reasonable suspicion that the ordinance had been violated. This does not require an exact measurement of the noise coming from the vehicle. The detective's testimony that he heard the loud music and bass from down the street while he was standing on a porch is sufficient to provide a suspicion that the noise ordinance had been violated. At that point, clearly the detective had the authority to detain Watie. See *Whren*, 517 U.S. at 810. This knowledge is imputed to the patrolman who, thus, had the authority to detain Watie.

Of course, matters progressed from there. The brief detention turned into an arrest once the officers discovered Watie's identity and the existence of the arrest warrants. During the subsequent search incident to that arrest, the marijuana in Watie's pants pocket was found. Watie does not challenge the progression of the investigatory detention into an arrest or the subsequent search incident to the arrest.

5

The district court correctly denied the motion to suppress and properly admitted the contraband.

Affirmed.